UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| CASSANDRA F. JOHNSON, Administrator of the Estate of LEONARD JOHNSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA, JOHN/JANE DOES 1-10, and UNKNOWN CORPORATIONS XYZ,<br><br>                    Defendants. | Civ. No.<br><br><br>COMPLAINT FOR WRONGFUL DEATH, MEDICAL NEGLIGENCE, PERSONAL INJURY, INFORMED CONSENT |

## I.    PARTIES

1.1     Cassandra Johnson is the wife and widow of decedent Leonard Johnson, and the Administrator of the Estate of Leonard Johnson. Cassandra Johnson currently resides in Pierce County, Washington and all times material hereto resided in Pierce County, Washington.

1.2     Defendant United States of America is named on the basis of the determination pursuant to Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b), as Defendant which provides the causes of action for medical negligence, negligence, informed consent, corporate negligence, failure to diagnose, medical malpractice, and wrongful death of Leonard Johnson occurred on the grounds of a federal military medical installation, Madigan Army Medical Center, a hospital run by the Department of the Army, owned and maintained by the United States of

COMPLAINT FOR WRONGFUL DEATH - 1

America.  Additionally, the United States is named on the basis of the determination pursuant to 28 U.S.C. Sec 2671 that the United States Army, and its employees and agents are employees and agents of the Government.

1.3     Plaintiff alleges that there may be other persons or entities whose negligence contributed to the death of Plaintiff's spouse, but whose identity is not known and who are referred to herein as John/Jane Does 1-10 and Unknown Corporations XYZ.  Plaintiff requests that these pleadings be amended to reflect the true identities of these Defendants if and when they are identified.

1.4     Plaintiff alleges that there may be other Corporations or Partnerships that employed individuals mentioned in the paragraphs above, such as to make these John and Jane Does and Unknown Corporations XYZ responsible, whose negligence contributed to the death of Plaintiff's spouse, but whose identity is not now known and who are referred to herein as John/Jane Does 1-10 or Unknown Corporations XYZ.  Plaintiff requests that these pleadings be amended to reflect the true identities of these Defendants if and when they are identified.

## II.     JURISDICTION AND VENUE

2.1     On February 5, 2018, Cassandra F. Johnson, the Administrator of the Estate of Leonard Johnson, submitted a Claim for Damage, Injury, or Death Tort Claim form on all appropriate agencies.   The Madigan Army Medical Center, Claims Office Madigan, acknowledged receipt of the claim form on February 7, 2018 *(See Exhibit A, attached)*. The claim was finally denied in writing on December 31, 2020 *(See Exhibit F, attached)*. Therefore, this Court has jurisdiction over the claims against the United States of America pursuant to 28 U.S.C. 2675(a).

COMPLAINT FOR WRONGFUL DEATH - 2

2.2     The incidents that gave rise to the tort claim occurred at the Madigan Army Medical Center located on Joint Base Lewis-McChord in Pierce County, Washington.  Plaintiff resides in Pierce County.  Venue is therefore proper under 28 U.S.C. Sec. 1402(b).

### III.    STATEMENT OF CLAIMS

3.1     Leonard Johnson was born September 24, 1942.

3.2     Leonard and Cassandra Johnson were married February 27, 1981 until his death.

3.3     Mr. Johnson served in the United States Army from September 26, 1966 to September 30, 1987. He served two tours of duty in Vietnam during the Vietnam conflict.

3.4     Mr. Johnson received health care during times pertinent to this claim through the Army Madigan Medical Center.

3.5     Mr. Johnson's first CXR (chest x-ray) obtained at Madigan AMC was 7/19/05. He was 62 years old and had an approximately 80 pack year smoking history. The radiologist concluded that the lungs were well expanded and that there was no evidence of airspace consolidation. This CXR was unchanged from one done in April 2005. There was no mention of COPD (chronic obstructive pulmonary disease) or emphysema.

3.6     Dr. Ernest Fox saw Mr. Johnson 8/1/06 for evaluation of ongoing stomach concerns, anemia and weight loss. His weight was 115 pounds on 12/12/05 and was down to 101 pounds on 8/1/06. His PSA was stable a 3.69. A CXR showed a "new subtle retrosternal opacity is most likely due to summation of densities, but a lung nodule is not completely excluded in this patient with emphysema/history of smoking and weight loss. A CT chest is recommended for further evaluation." A CT chest was done on 8/11/067. No result was dictated into the medical records and there is no copy of this xray available currently. A small bowel follow through study, ultrasound of the abdomen and stool hemoccults were negative or

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

normal in August 2006. Mr. Johnson was seen in the GI clinic in August to help determine the cause of his abdominal pain and anemia.

3.7     Mr. Johnson was seen in the ENT clinic in September 2006, March 2007, and April 2009 for recommendations regarding a 1.4 cm left lower lobe thyroid nodule. A fine needle biopsy of the nodule was scant and did not show malignant cells October 2006. Endocrinology consultation in June 2009 found the nodule to maintain size stability over the nearly 3 years and felt that the nodule was "almost certainly benign."

3.8     The PSA was 3.93 2/5/07 and 6.25 11/25/08. Referral to urology was recommended by Family Physician Courtney Landry MD. There is no available record of urology consultation until 10/7/10.

3.9     A CT abdomen/pelvis done 2/21/09 showed "nodular mass-like densities in the lingula." This report recommended reviewing the CT chest angiogram done the same day. Mr. Johnson was coughing and pneumonia was a concern. At an urology office visit with Dr. Patrick McDonough on 10/7/10 and 10/12/10, it was noted that the radiologist recommended a follow up CT chest with concerns about resolution of the lingular density on the February 2009 CT.  We do not have a copy of the CT chest done 10/28/10, however, a subsequent note from 4/7/16 noted this high resolution CT did "not show any nodules."

3.10     The PSA continued to climb and fluctuate. It was 9.09 2/24/09, 10.42 2/26/09, 8.23 7/1/09, 11.8 10/5/10 and 10.41 6/22/12. Notes indicate that Dr. McDonough encouraged Mr. Johnson to have a prostate biopsy on 10/7/10, 10/12/10, 10/20/10 and during a phone call 11/3/10. Mr. Johnson was recorded as saying that "he is not interested in pursuing treatment for cancer of cancer of any type" at that time. He was to call if he changed his mind. Mr. Johnson was unaware of the lung cancer risk at that time. Mrs. Johnson stated in 2018 after reviewing

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

those notes, "If Leonard and I were informed of an early diagnosis of his lung cancer, I believe without a doubt that he would have taken any surgical option and treatment available at that time."

3.11    Dr. Michael Kelly had frequent office visits wit Mr. Johnson from 11/23/10-10/1/15. He recorded that Mr. Johnson had up to a 95 pack-year smoking history on 9/8/11. He said he started smoking at age 20 using typically 2 packs of cigarettes per day. He was 68 years old at the time of that office visit. His room air oxygen was 99% and his peak flow was recorded at 150 (typically about 500 at his age). Dr. Kelly consistently recommended that Mr. Johnson quit smoking cigarettes. He agreed to a pneumovax on 6/22/12.

3.12    An echocardiogram done 10/29/12 showed normal left ventricular function with an ejection fraction at 55%. We do not have the report to know how the right heart was functioning in the setting of COPD. An oxygen with exertion fell to 85% (normal is 95-100%) at that time. A pulmonologist, Dr. Barbara Hopkins, recommended home oxygen with exertion. With 2 liters of oxygen his oxygen with exertion was 94%. Mr. Johnson was admitted for an exacerbate of COPD at this time.

3.13    Dr. Kelly saw Mr. Johnson back after that hospitalization for COPD exacerbation on 11/14/12. Mr. Johnson's oxygen on room air was 99%. He was on tapering steroids and felt good.

3.14    On 1/17/13 Mr. Johnson saw Dr. Kelly for evaluation of left upper quadrasnt abdominal pain and dyspnea "only at times…upon awakening or during exertion and coughing." His lungs were clear on lung examination. Dr. Kelly recommended a CXR and CT abdomen/pelvis.

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

3.15    A CXR was read by Dr. Alan Mui on 1/31/13. He said that there was COPD and "there is a paucity of peripheral lung markings in the upper lung field bilaterally, likely secondary to known COPD and with no definite pleural line to suggest pneumothorax. Correlation with CT chest for further evaluation may be obtained if clinically warranted." Dr. Kelly did not think a CT chest was clinically warranted and did not request a CT chest at that time.

3.16    On 2/11/13, Dr. Kevin Kumke, pulmonologist, read some lung function tests for Mr. Johnson. The forced vital capacity (FVC) was at 55%, the forced expiration in 1 second (FEV1) was 25% with an 11% improvement with bronchodilators. The actual FEV1 was 0.47 increasing to .52 with bronchodilator. A normal FEV1 would have been 1.88 for a man his age and size.

3.17    CXRs done 5/2/13 for another COPD exacerbation hospitalization noted slightly more prominence to the pulmonary vasculature as well as COPD. When Mr. Johnson saw Dr. Kelly in follow up 5/15/13, he had finished the antibiotic and was tapering his steroids. His oxygen on room air was 98%. Dr. Kelly noted that Mr. Johnson "takes his medications as directed."

3.18    Mr. Johnson had another hospitalization for COPD exacerbation 3/3/14. The CXR was unchanged from May 2013. He was a little more anemic with a hemoglobin of 11 (typically normal range is 13.5 – 17.5) with a lower ferritin at 90 (normal 13-400). Dr. Kelly refilled his Albuterol and noted he was again tapering off his steroids at the follow up visit 3/10/14. He noted that Mr. Johnson quit smoking 3/3/14.

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

3.19    The CXR taken during his next hospitalization for COPD exacerbation was on 7/4/14. Dr. David Semerad and Dr. David Nguyen noted emphysema and atelectasis but no masses.

3.20    Oxygen was being used on a more continuous basis by Mr. Johnson at a visit with Dr. Kelly 7/23/14.

3.21    Pulmonologist, Kevin Mumke MD, visited with Mr. Johnson 8/15/14. He noted that he was hospitalized twice in July for COPD exacerbations. He was feeling much better. He was finishing a prednisone taper. No clubbing was noted in the fingertips. The oxygen was better than 91% with exertion and Dr. Kumke suggested that he discontinue home oxygen.

3.22    Pulmonary function testing was repeated 2/10/15. The FVC was 44% (1.29), the FEV1 was 22% (0.46) and the diffusing capacity of carbon monoxide (DLCO) was 34%.

3.23    Dr. Kumke stated that Mr. Johnson's CT chest done in 2010 showed "no nodules, consistent with COPD." Mr. Johnson had Gold D COPD. Prior pulmonary function tests (PFTs) were reviewed.

3.24    Mr. Johnson was concerned about a stomach ulcer when he saw Dr. Kelly 5/29/15. A GI consult and CT abdomen/pelvis was ordered. We do not have a copy of the CT report from 6/8/15. We have no record that Mr. Johnson was referred back to GI.

3.25    A CXR done in the emergency room 9/1/15 was read by radiologist Douglas Snodgrass MD. He said that there was "No acute cardiopulmonary process. Emphysema."

3.26    Mr. Johnson and his wife called Dr. Kelly's office 10/1/15 to remind him that he was due for a colonoscopy as the last one was over 10 years ago. He talked to Nurse Michele Canlas. The colonoscopy was scheduled for March 2016 after Mr. Johnson was seen by Dr. James Bales 11/30/15.

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

3.27    Dr. Andrew Kim and Dr. Patricia Ann Short saw Mr. Johnson 3/10/16 for follow up of COPD, constipation and anemia.  He weighed 106 pounds. They noted that "given significant smoking history and age, Low Dose CT chest screening was indicated."

3.28    This CT chest documented a 5 x 2.9 x 4.2 cm right upper lobe (RUL) mass with possible chest wall invasion. There were also two nodules in the left upper lobe measuring 8 mm and 4 mm.

3.29    Dr. Kumke called Mr. and Mrs. Johnson with the results of this CT chest on 3/22/16. He set up a PET/CT scan and a clinic follow up appointment.

3.30    The PET/CT done 3/29/16 documented a 5.5 x 3.4 cm pleural based mass in the RUL with a very high SUV at 18.3 (normal <2.0) and central necrosis. At 1.1 cm right peribronchial lymph node had a SUV of 2.7. There was a focal uptake adjacent to the7th rib measuring 5-6 mm with SUV 2.7. There was a 10 mm focus of FDG-avid hypermetabolism with an SUV of 5.1 in the right prostate gland without focal anatomic correlate.

3.31    The PET/CT scan was reviewed with the Johnsons at an office visit with Dr. Kumke 3/30/16. It was noted that his dyspnea was not changed for over a year. His oxygen was 92% after a 50-yard walk. PFTs done 3/30/16 documented an FVC of 46%, FEV1 of 19% and DLCO of 34%.

3.32    A CT-guided lung biopsy was done by interventional radiologist Pamela Mallari MD on 4/7/16. She noted that "Upon review, he had previously completed a high resolution CT chest in 2010 that did not show any nodules." This biopsy showed non-small cell lung cancer consistent with squamous cell carcinoma. Dr. Kumke called Mr. Johnson with this result on 4/18/16. He discussed options and said that he was going to discuss Mr. Johnson's case at tumor board.

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA  98402
TEL: (253) 203-3325

3.33    The Madigan thoracic tumor board stated that Mr. Johnson was at high surgical risk with comorbidity. Surgery was not felt to be safe and referral was recommended to radiation oncology.

3.34    Mr. Johnson followed up on his PSA on 4/25/16. The value was now 20.19.

3.35    Tylenol, Mobic and a Lidocaine patch were prescribed for Mr. Johnson's right shoulder pain.

3.36    Radiation Oncologist Brent Tinnel MD consulted with the Johnsons on 5/3/16. He was having a chronic cough. Dr. Tinnel discussed treating the lesion with radiation therapy alone or with chemotherapy. An MRI of the brain done 5/21/16 showed no evidence of brain metastases. Mr. Johnson said he would prefer to be treated closer to home at Tacoma General Hospital.

3.37    Radiation Oncologist Suraj Singh MD consulted with the Johnsons on 5/26/16. It was felt that this tumor was probably Stage IIIA. IMRT (intensity-modulated radiation therapy) was recommended to 66 Gy in 37 fractions.

3.38    On the radiation planning CT chest done 6/2/16, the mass in the RUL had increased to 7x6 cm and extended through the lateral chest wall with rib destruction. There was a new nodule in the RUL measuring 12 mm.

3.39    Medical oncologist Troy Wadsworth MD recommended weekly Taxol with Carboplatin concurrent with the radiation therapy on 6/7/16. His ECOG (Eastern Cooperative Oncology Group) performance status was 2 indicating he was ambulatory and capable of all self-care but unable to carry out any work activities; he was up and about more than 50% of waking hours. Mr. Johnson made it clear he did not want any chemotherapy.

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

3.40     Mr. Johnson was admitted to Tacoma General Hospital 8/4/16 for "failure to thrive". He was given IV fluids for dehydration. He was given 2 units of blood for a severe anemia with hemoglobin now 5.6. The mass in the RUL was 8.6 x 4.7 cm by CXR. He had a new nodule on his skin on his back that was biopsied and confirmed to be metastatic poorly differentiated carcinoma consistent with a lung primary. A CT chest angiogram showed no evidence of pulmonary embolism but showed multiple areas of tumor progression within the chest. At a Palliative Care consult on 8/9/16, he decided to go with comfort measures only and hold any further radiation therapy.

3.41     Mr. Johnson died of metastatic lung cancer on 8/24/16.

3.42     Cassandra Johnson filed a Standard Form 95 on February 5, 2018. (*See Exhibit A, attached*).

3.43     On November 8, 2019, Ms. Johnson after months of not receiving a meaningful response to multiple inquiries or a decision from the Department of the Army, U.S. Army Claims Service, she requested assistance from the Office of Representative Denny Heck.

3.44     On November 22, 2019, the Department of the Army responded to the Office of Representative Denny Heck. *(See Exhibit B, attached)*.

3.45     On December 9, 2019, the Department of the Army issued an administrative action denying the claim of Cassandra Johnson. (*See Exhibit C, attached*).

3.46     On December 27, 2019, Ms. Johnson through her attorney filed a Request for Reconsideration to the Department of Army of the administrative action denying the claim. *(See Exhibit D, attached)*.

3.47     On November 10, 2020, again Ms. Johnson sought assistance from the Office of Representative Denny Heck to secure a response to the Request for Reconsideration.

COMPLAINT FOR WRONGFUL DEATH - 10

3.48    On November 19,2020, the Department of the Army responded to the Office of Representative Denny Heck. *(See Exhibit E, attached).*

3.49    On December 31, 2020, the Department of the Army issued notice to Ms. Johnson of the final administrative action denying the claim. *(See Exhibit F, attached).*

## IV.    CLAIMS AGAINST THE UNITED STATES OF AMERICA

4.1    As alleged above, the Army Madigan Medical Center and its employees are employees of the United States Government pursuant to 28 U.S.C. Sec. 2671. Therefore, the proper Defendant in this matter is the United States of America.

4.2    <u>Medical Negligence</u>. Defendant United States of America, by and through its employees and agents, Madigan Army Medical center, failed to exercise the degree of care, skill, and learning expected of reasonably prudent health care providers in the same profession or class in the State of Washington acting in the same or similar circumstances. Such conduct proximately caused severe injuries and damages, including death, to Leonard Johnson and Plaintiff Cassandra Johnson. Such conduct establishes claims under RCW 4.24, RCW 7.70 and other applicable law.

4.3    <u>Negligence</u>. The Madigan Army Medical Center system failed to exercise the degree of care, skill, and learning expected of reasonably prudent health care providers in the same profession or class in the State of Washington acting in the same or similar circumstances. If the actions of Defendant fall outside of these parameters, negligence has occurred.

4.4    <u>Informed Consent</u>. Defendant United States of America, by and through Madigan Army Medical Center and its employees, breached its duty to inform Plaintiff of all material facts, including risks and alternatives, which is a reasonably prudent patient would

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

need to make an informed decision on whether to consent to or reject proposed courses of treatment. This conduct proximately caused injury to Plaintiff.

    4.5    Corporate Negligence. Defendant United States of America is liable under the doctrine of corporate negligence, WPI 105.02.02. Defendant Hospital owes an independent duty of care to its patients and has a duty to exercise the degree of skill, care, and learning expected of a reasonably prudent hospital. Defendant is responsible for all acts and omissions of its employees, agents, independent contractors and is responsible for adequate supervision of its staff members.

## V.    PROXIMATE CAUSE

    5.1    The conduct of the Defendants was the proximate cause of the injuries and damages outlined below.

## VI.    INJURIES AND DAMAGES

    6.1    The acts and omissions of Defendants directly and proximately caused Mr. Johnson to suffer death following severe and permanent injury, both mental and physical, pain and suffering, mental anguish, disability, and other elements of damages as allowed by law.

    6.2    Plaintiff incurred out-of-pocket expenses, including but not limited to medical expenses, home health care, income loss, and other expenses in an amount that will be proven at trial.

    WHEREFORE, having set forth her complaint, Plaintiff requests the Court enter judgment against Defendants, jointly and severally, for all injuries and damages sustained by Plaintiff in the sum of three million dollars, together with reasonable costs and fees incurred herein.

LAW OFFICE OF FLOYD CHAPMAN, PLLC
1201 PACIFIC AVENUE, SUITE 600
TACOMA WA 98402
TEL: (253) 203-3325

1    DATED this 5th day of April, 2021

2

3    ___/s/Floyd R. Chapman___
     Floyd R. Chapman, WSBA #49357

4    Law Office of Floyd Chapman, PLLC
     1201 Pacific Avenue, Suite 600

5    Tacoma WA 98402
     Tel: (253) 203-3325

6    Email: floydchapman@ymail.com

7

8    ___/s/Anthony A. Russo___
     Anthony A. Russo, WSBA No. #6272

9    Russo & Graham
     P.O. Box 15178

10   7724 35th Ave. NE
     Seattle WA 98115

11   Tel: (206) 448-5905
     Email: tony@russograham.com

12

13   Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR WRONGFUL DEATH - 13

# EXHIBIT A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Madigan Army Medical Center<br>Office of the Center Judge Advocate<br>9040B Jackson Avenue<br>Tacoma WA 98431 | Floyd R. Chapman, PR for Cassandra F. Johnson<br>Law Office of Floyd Chapman, PLLC<br>1201 Pacific Avenue, Suite 600<br>Tacoma WA 98402 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 09/24/1942 | Married | 08/24/2016 | Wednesday | 08:00 A.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Breach of the standard of care, failure to diagnose, medical malpractice, and wrongful death are the basis of the claim. Leonard Johnson, an Army veteran receiving treatment at Madigan, died from metastatic non-small cell lung cancer on August 24, 2016. He had an 84 pkyr smoking history with long term self reported pain while breathing. He did not receive LDCT that became the standard of care in 2011 for those with a greater than 30 pkyr smoking history and ages 55-74. His overall survival and cure rate were reduced because he did not receive the LDCT starting in 2011 and FDG-PET with SBRT in 2013 with RT or diagnosis.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Metastatic non-small cell lung cancer is the cause of death. Breach of the standard of care, failure to diagnose, medical malpractice, and wrongful death are the basis of the claim. Leonard Johnson is the decedent. He was diagnosed on April 7, 2016, and died on August 24, 2016. Cassandra F. Johnson is the Administratrix of the Estate of Leonard Johnson. See death certificate, letter of administration, order authorizing legal action, select medical records, and representation document included.

| 11. | WITNESSES |  |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
|  |  |

12. (See instructions on reverse).

AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
|  | 1,500,000 | 1,500,000 | 3,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | 253-203-3325 | 02/05/2018 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

*[stamp: CLAIMS OFFICE FEB 12 RECEIVED MADIGAN]*

| Authorized for Local Reproduction<br>Previous Edition is not Usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|
| 95-109 | 18-012-T009 | |

.

EXHIBIT B



**DEPARTMENT OF THE ARMY**
U.S. ARMY CLAIMS SERVICE
OFFICE OF THE JUDGE ADVOCATE GENERAL
4411 LLEWELLYN AVENUE, SUITE 5360
FORT GEORGE G. MEADE, MARYLAND 20755-5125

November 22, 2019

The Honorable Denny Heck
United States Representative
420 College Street SE, Suite 3000
Lacey, Washington  98503

Dear Representative Heck:

This letter responds to a request from your office for a status update on a tort claim against the United States Army filed by your constituent, Mrs. Cassandra Johnson. Mrs. Johnson filed her claim through her attorney, Mr. Floyd R. Chapman, on February 7, 2018, seeking compensation for personal injury and the wrongful death of her husband, Mr. Leonard Johnson, arising out of alleged medical malpractice by U.S. Government healthcare providers at Madigan Army Medical Center, Tacoma, Washington.  As discussed below, this Command has obtained the necessary expert medical opinions to render a decision concerning this claim, and a notice to the claimant's counsel is forthcoming within weeks.

When a person files a claim against the U.S. Army under the Federal Tort Claims Act, this Command undertakes an investigation to determine whether the claim is meritorious.  Where medical malpractice is alleged, Army Regulations require that this Command and the claimant obtain expert medical opinions to determine whether the standard of care was met.  Due to a backlog of claims, obtaining the expert medical opinion(s) sometimes takes over a year.  In this case, this Service sought, and has now received, opinions from a board-certified Hematology-Oncology physician and a senior, board-certified General Surgeon.

The Attorney-Advisor responsible for this claim is preparing a recommendation for the Chief, Settlements Branch.  He will, in turn, notify the claimant, through her counsel, of this organization's decision on her claim.  We expect this notice will be issued within the next two weeks.  If your constituent requires further assistance, please contact the Attorney-Advisor, Ms. Deborah Haffey at 301-677-9451 or by email deborah.t.haffey.civ@mail.mil.  I trust this answers your questions regarding your constituent.  Thank you for your interest in this matter.

Sincerely,

David O. Anglin
Lieutenant Colonel, U.S. Army
Commanding

EXHIBIT C



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY CLAIMS SERVICE
OFFICE OF THE JUDGE ADVOCATE GENERAL
4411 LLEWELLYN AVENUE, SUITE 5360
FORT GEORGE G. MEADE, MARYLAND 20755-5125

DEC 0 3 2019

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

Tort Claims Division
18-012-T009

Floyd R. Chapman
Law Office of Floyd Chapman, PLLC
1201 Pacific Avenue, Suite 600
Tacoma, Washington 98402

Dear Mr. Chapman:

This notice constitutes final administrative action on the claim of your client, Mrs. Cassandra F. Johnson, filed against the United States in the amount of $1,500,000, for the wrongful death of her husband, Mr. Leonard Johnson on August 24, 2016. The claim alleges breach of the standard of care, failure to diagnose lung cancer and medical malpractice by health care providers at Madigan Army Medical Center (MAMC). The claim further alleges that Mr. Johnson did not receive a low dose cat scan (LDCT) in 2011 when the test first became available. It is alleged that Mr. Johnson's overall survival rate was reduced because he did not receive the LDCT in 2011, instead receiving it in March 2016.

I must inform you that the claim is denied. Under the Federal Tort Claims Act, (FTCA), 28 U.S.C. §§ 1346b; 2671-2680, the United States can only be held liable under limited circumstances where the negligent acts or omissions of U.S. Government employees acting within the scope of their employment proximately cause injury. A thorough investigation of the facts and circumstances of this claim determined that there were no negligent or wrongful acts or omissions by U.S. Government employees at MAMC.

Mrs. Johnson alleged that a new radiographic screening technique involving use of LDCTs to diagnose lung masses in heavy smokers, first proposed in 2011, should have been used as early as 2011 to diagnose her husband's lung cancer allowing surgical resection to be performed. Based upon this allegation our Service had this case first reviewed by a board-certified Hematology-Oncology physician, who has worked in this field for 40 years. Our expert was of the opinion that use of LDCT as a screening tool in heavy smokers did not become the standard of care until 2014 after this new idea of using CTs, which contain radiation, was thoroughly studied by experts in the medical community (of which our expert was one), the risks and benefits to a particular patient population could be weighed and finally, criteria and protocols could be established. By early 2014, the medical community had reached a consensus and decided that the benefits (possible earlier detection of lung masses that could be surgically resected)

-2-

outweighed the risks (radiation and high cost) for a certain, select group of heavy smokers. Thus on March 4, 2014, the United States Preventative Services Task Force published its recommendations for LDCT in the Annals of Internal Medicine therefore making it the standard of care. However, our expert points out that not all heavy smokers are automatically offered the screening.  Criteria such as overall health (can the patient survive major lung resection) and willingness to comply with the requirements of the program are considered.

Our Hematology-Oncology expert was of the opinion, based upon a review of the available chest x-rays and his 40 years of experience, that Mr. Johnson very likely did not have a lung mass detectable by a CT until 2015. Thus any question about not doing a CT prior to 2015 is moot as the scans would not have revealed a lung mass.  To further answer any question about whether lung resection could have been performed in 2015 had a CT scan been done then (our Hematology-Oncologist said no surgery could be done then due to the poor health of Mr. Johnson), our Service had the claim further reviewed by a senior, board-certified general surgeon. This physician was of the opinion that Mr. Johnson's poor health, having been diagnosed with severe Chronic Obstructive Pulmonary Disease (COPD) in 2013 ruled out any surgical intervention after 2013. Mr. Johnson's lung capacity was simply insufficient to risk such a major surgery. In summary, by the time that Mr. Johnson may have had a lung mass detected by a CT (2015), he was too sick with COPD to be offered surgical intervention.

If your client is dissatisfied with the denial of her claim, she may file suit in an appropriate United States District Court no later than six months from the date of mailing of this letter. *See* 28 C.F.R. § 14.9(a). By law, failure to comply with that time limit forever bars the claim. *See* 28 U.S.C. § 2401(b). This notice of final denial should not be construed as a concession by the United States that the claimant has complied with the applicable requirements of 28 U.S.C. § 2675(a) or 28 C.F.R. Part 14, nor should this be construed as a waiver by the United States of any of its defenses regarding the claim.

Sincerely,

Nicholas M. Satriano
Supervisory Attorney
Chief, Tort Claims Settlements Division

EXHIBIT D

# Floyd R. Chapman
ATTORNEY AT Law
Law Office of Floyd Chapman, PLLC
1201 Pacific Ave., Suite 600
Tacoma WA 98402
(253) 203-3325

December 27, 2019

Department of the Army
United States Army Claims Service
Office of the Judge Advocate General
4411 Llewellyn Avenue, Suite 5360
Fort George G. Meade, Maryland 20755-5125

> Re: Administrative Tort Claims Division – Mrs. Cassandra F. Johnson
> For Settlement Purposes Only – Request for Reconsideration

Dear Mr. Nicholas M. Satriano,

This medical malpractice claim is not particularly difficult to understand after a careful reconsideration either from an independent medical examination perspective or an error in opinion by your board-certified Hematology-Oncology physician and board-certified general surgeon or a legal conclusion perspective.

**Archive NCCN Clinical Practice Guidelines in Oncology (NCCN Guidelines®) for Lung Cancer Screening V.1.2012**

After reviewing your Dec 03 2019 denial letter, "Our expert was of the opinion that use of LDCT as a screening tool in heavy smokers did not become the standard of care until 2014…", Dr. Judy Schmidt, our board-certified medical oncologist and hematologist states in her attached letter of 12/22/19 that your expert is incorrect. Please see her attached resume. Dr. Schmidt flatly states, "This comment is incorrect. As per my report from 12/3/18, this long-awaited trial was published in the NEJM in 2011. The trial demonstrated a 20% relative reduction in mortality from lung cancer in patients aged 55 – 74 with at least 30 pack year smoking history. Mr. Johnson's medical records documented an 80 pack-year smoking history as of July 2005. Based on this seminal publication, the standard of care in the United States was to offer lung cancer screening to patients such as Mr. Johnson in 2011. In addition, the National Comprehensive Cancer Network (NCCN) guidelines, which represent the standard of care for oncology care for over 97% of malignancies, published their first lung cancer screening guideline with these exact recommendations in 2012. Therefore, the standard of care for lung cancer screening was to offer LDCT in 2011 per the NEJM reference and 2012 per the NEJM reference and 2012 according to the NCCN guidelines. Furthermore, the USPSTF published their recommendations in December 2013." Dr. Schmidt documents the failure to use LDCTs to diagnose the cancer was an obvious deviation from the standard of care.  And, if a trial were to occur, a U.S. District Court judge verdict for the plaintiff would naturally flow after the negligence elements are proven that the hospitals, clinics, and its staff, "… failed to exercise that degree of skill, care, and learning

possessed at that time by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages, ...." RCW 4.24. 290.

**Proper Venue**

The proper venue for a suit in a United States District Court is the Western District of Washington. Mr. and Mrs. Johnson lived in Lakewood Washington before and during the breach of the standard of care, the failure to diagnose the lung cancer, and the medical malpractice occurred at the Madigan Army Medical Center (MAMC) on Joint Base Lewis-McChord in Pierce County near Tacoma Washington. Mr. Johnson died in Tacoma Washington.

**NCCN Guidelines Version 1.2012 Panel Members**
**Lung Cancer Screening**

Douglas E. Wood, MD/Chair
University of Washington/Seattle Cancer Alliance
Surgical Oncology

Bryan F. Meyers, MD, MPH
Siteman Cancer Center at Barnes Jewish Hospital and
Washington University School of Medicine
Surgical Oncology

Sudhakar Pipavath, MD
University of Washington/Seattle Cancer Alliance
Diagnostic Radiology

**Tumor Mass Detectable as Early as 2013**

We disagree and believe the experts cited above will disagree with the statement in the Dec 03 2019 denial letter, "Our Hematology-Oncology expert was of the opinion, based upon a review of the available chest x-rays and his 40 years of experience, that Mr. Johnson very likely did not have a lung mass detectable by a CT until 2015."

Mr. Johnson died from metastatic non-small cell lung cancer caused by the failure of health care providers at the MAMC to follow the accepted standard of care using LDCT to detect a lung mass and diagnose the cancer at a treatable stage. Dr. Schmidt points out in her attached response that Mr. Johnson, "As per my report from 12/3/2108, using a doubling time calculator, knowing that the average age of a NSCLC is 3-4 years, knowing that the average doubling time of squamous cell cancer of the lung is 114 days, and knowing that the size of the tumor was 5.5 cm 3/29/16, we can calculate the tumor size at various time points at which Mr. Johnson was seen at the Department of the Army. The tumor would have measured 3.6 cm 9/1/15, 1.5 cm 7/4/14, 1.2 cm 3/3/14, 7 mm 5/2/13 and 6 mm 1/31/13. All of these masses would easily have been detected by LDCT imaging."

**Surgery for Mr. Johnson as Early as 2013**

If surgery were offered in 2013, Mr. and Mrs. Johnson would have agreed to the surgery. Dr. Schmidt points out in her response, "As per my report from 12/3/18 and articles from the UpTo Date journal, Mr. Johnson would have been a candidate for curative minimally invasive surgery and/or Stereotactic Body radiation Therapy (SBRT) for cure beginning in about 2013."

Beginning with the failure to diagnose the cancer in 2011 and deprived of the likelihood of a complete recovery with surgery as early as 2013, according to Dr. Schmidt, "As a direct and proximate cause of the delay in diagnosis of Mr. Johnson's lung cancer, he died of this disease 5 months after it was diagnosed. Mr. Johnson should have lived up to 12 more years based on the social security life expectancy tables had he been timely diagnosed and cured of this cancer."

**Summary**

This is a reasonable and good faith attempt on the part of Mrs. Johnson who wants to settle the matter now and move on in the time left to her to live without Mr. Johnson as a result of the MAMC's medical negligence. She is prepared in spirit and with stamina to continue the claim if the matter cannot settle.

To reiterate and support the medical negligence conclusion and point out the multiple failures by the MAMC hospital medical personnel, Mr. Johnson presented himself several times for treatment with documented lung cancer symptoms and did not receive the lung cancer diagnosis until the cancer was terminable. Mr. Johnson expected and deserved better and so does Mrs. Johnson.

We believe this case is amendable to administrative resolution. We look forward to hearing from you and participating in good faith settlement negotiations.

Very truly yours,

Floyd R. Chapman

Exhibits

3

Judy L Schmidt MD FACP
4590 Nicole Court
Missoula, Montana 59803

12/22/19

Re: Leonard Johnson v Department of the Army

Floyd R. Chapman
Law Office of Floyd Chapman, PLLC
1201 Pacific Avenue, Suite 600
Tacoma, Washington 98402

Dear Mr. Chapman:

Thank you for forwarding the 12/3/19 certified letter from supervisory attorney Nicolas M. Satriano regarding the Leonard Johnson Tort Claim 18-012-T009. I am in disagreement with Mr. Satriano on several aspects of the claim and will outline my thoughts. Please re-review my report from 12/3/18 for a thorough discussion of the statements below.

**"Our expert was of the opinion that use of LDCT as a screening tool in heavy smokers did not become the standard of care until 2014..."**

This comment is incorrect. As per my report from 12/3/18, this long-awaited trial was published in the NEJM in 2011. The trial demonstrated a 20% relative reduction in mortality from lung cancer in patients aged 55 - 74 with at least 30 pack year smoking history. Mr. Johnson's medical records documented an 80 pack-year smoking history as of July 2005. Based on this seminal publication, the standard of care in the United States was to offer lung cancer screening to patients such as Mr. Johnson in 2011. In addition, the National Comprehensive Cancer Network (NCCN) guidelines, which represent the standard of care for oncology care for over 97% of malignancies, published their first lung cancer screening guideline with these exact recommendations in 2012. Therefore, the standard of care for lung cancer screening was to offer LDCT in 2011 per the NEJM reference and 2012 according to the NCCN guidelines. Furthermore, the USPSTF published their recommendations in December 2013.

**"Our Hematology-Oncology expert was of the opinion that Mr. Johnson very likely did not have a lung mass detectable by a CT until 2015."**

This comment is incorrect. As per my report from 12/3/18, using a doubling time calculator, knowing that the average age of a NSCLC is 3 - 4 years, knowing that the average doubling time of squamous cell cancer of the lung is 114 days, and knowing that the size of the tumor was 5.5 cm 3/29/16, we can calculate the tumor size at various time points at which Mr. Johnson was seen at the Department of the Army. The tumor would have measured 3.6 cm 9/1/15, 1.5 cm 7/4/14, 1.2 cm 3/3/14, 7 mm 5/2/13 and 6 mm 1/31/13. All of these masses would easily have been detected by LDCT imaging.

**"...no surgery could be done then (2015) due to the poor health of the Mr. Johnson..."**

This comment is incorrect. As per my report from 12/3/18 and articles from the UpToDate journal, Mr. Johnson would have been a candidate for curative minimally invasive surgery and/or Stereotactic Body Radiation Therapy (SBRT) for cure beginning in about 2013.

Page 1

The Department of the Army should have offered Mr. Johnson LDCT beginning in 2011 when the long-awaited NEJM seminal paper was published documenting a 20% relative reduction in lung cancer mortality with annual LDCT in heavy smokers such as Mr. Johnson. Had they performed this LDCT scanning, they would have documented an increasing lung mass by 1/31/13 and offered Mr. Johnson minimally invasive surgery or SBRT for cure. As a direct and proximate cause of the delay in diagnosis of Mr. Johnson's lung cancer, he died of this disease 5 months after it was diagnosed. Mr. Johnson should have lived up to 12 more years based on the social security life expectancy tables had he been timely diagnosed and cured of this cancer.

Sincerely,

Judy L Schmidt MD FACP

EXHIBIT E



**DEPARTMENT OF THE ARMY**
U.S. ARMY CLAIMS SERVICE
OFFICE OF THE JUDGE ADVOCATE GENERAL
4411 LLEWELLYN AVENUE, SUITE 5360
FORT GEORGE G. MEADE, MARYLAND 20755-5125

November 19, 2020

Office of the Honorable Denny Heck
United States Representative
2452 Rayburn House Office Building
Washington, DC 20515

Dear Representative Heck:

This letter responds to a request from your office for a status update on a tort claim against the United States Army filed by your constituent, Mrs. Cassandra Johnson. On February 7, 2018, Mrs. Johnson filed her claim through her attorney for personal injury and the wrongful death of her husband, Mr. Leonard Johnson, arising out of alleged medical malpractice by U.S. Government health care providers at Madigan Army Medical Center in Tacoma, Washington. As discussed below, Mrs. Johnson's claim was investigated and denied, but was reopened for reconsideration at her request and is now pending a final denial.

Mrs. Johnson's claim was investigated thoroughly and was considered under the Federal Tort Claims Act (FTCA). Under the FTCA, which applies the state law where the acts occurred, the U.S. Government may only be held liable as a private person would for negligent acts or omissions that caused the claimant's loss. In this instance, Army claims personnel found insufficient evidence of negligence by Government personnel that resulted in the death of Mr. Johnson, a lifelong heavy smoker, who died of lung cancer on August 24, 2016. Accordingly, Mrs. Johnson's claim was denied by letter dated December 3, 2019. The denial letter advised Mrs. Johnson of the basis for the decision and advised her of her right to request reconsideration or pursue litigation. Thereafter, Mrs. Johnson filed a reconsideration request on December 27, 2019. In reviewing Mrs. Johnson's reconsideration request, there appears to be no compelling new information in support of her position. This Service will deny the request for reconsideration shortly, and Mrs. Johnson will be notified through her attorney.

I trust this information is helpful. Thank you for your interest in this matter.

Sincerely,

David O. Anglin
Lieutenant Colonel, U.S. Army
Commanding

EXHIBIT F



**DEPARTMENT OF THE ARMY**
U.S. ARMY CLAIMS SERVICE
OFFICE OF THE JUDGE ADVOCATE GENERAL
4411 LLEWELLYN AVENUE, SUITE 5360
FORT GEORGE G. MEADE, MARYLAND 20755-5125

DEC 3 1 2020

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

Office of the Commander
18-012-T009

Mr. Floyd R. Chapman
Attorney at Law
Law Office of Floyd R. Chapman, PLLC
1201 Pacific Ave, Suite 600
Tacoma, WA  98402

Dear Mr. Chapman:

This notice constitutes final administrative action on the request for reconsideration of your client, Mrs. Cassandra Johnson, from the denial of her claim against the United States in the amount of $3,000,000. Mrs. Johnson's claim was denied on December 3, 2019 by Mr. Nicholas M. Satriano of this Service. You filed a request for reconsideration with this Service on December 27, 2019. The claim and the reconsideration both request compensation for personal injury and the wrongful death of her husband, Mr. Leonard Johnson, arising out of alleged medical malpractice by U.S. Government health care provides at Madigan Army Medical Center (MAMC), Tacoma, Washington. Mr. Johnson, a life-long, heavy smoker died of lung cancer on August 24, 2016.

I must inform you that your client's request for reconsideration is denied. Your request for reconsideration was processed under the Federal Tort Claims Act (FTCA), Title 28 of the United States Code, Sections 2671-2680 and 2401(b). The opinion that your expert puts forth is completely contrary to what our experts continue to firmly opine. Thus, I have no choice but to deny your client's request for reconsideration.

Your client may elect to file suit in an appropriate U.S. District Court no later than six months from the mailing date of this letter. By law, failure to file suit within that six-month time limit forever bars you from further suit. I am not implying that any such suit, if filed, would be successful.

Sincerely,

ANGLIN.DAVID.O
RIEL.1121399829
Digitally signed by
ANGLIN.DAVID.ORIEL.11213998
29
Date: 2020.12.30 13:35:11
-05'00'

David O. Anglin
Lieutenant Colonel, U.S. Army
Commanding